No. 22,800.

THE CENTRAL KANSAS MOTOR COMPANY, *Appellant,* v. H. F. KLINE, *Appellee.*

SYLLABUS BY THE COURT.

1. SALE OF AUTOMOBILE—*Title Note Given—Title Note Must Be Signed by Purchaser.* A title note given for the purchase of personal property, to constitute a valid lien thereon as against subsequent innocent third parties, must be executed by the purchaser, not by a third party who is not a purchaser.

2. SAME—*Title Note on Record—Liability of One Who Obtains Possession of the Automobile.* A purchaser, or one who obtains possession, of personal property on which there is a lien evidenced by a duly recorded title note, is not personally liable on the note where his name does not appear thereon, and he has not in any way agreed to pay it.

3. SAME—*Junior Lienholder—Paying for Repairs—No Subrogation.* A junior lienholder who, without the knowledge of prior lienholders takes possession of a wrecked automobile and causes it to be repaired and pays for the repairs, is not entitled to be subrogated to the repairman's lien rights.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed June 11, 1921. Reversed.

*John R. Parsons,* of Wa Keeney, *C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellant.

*Herman Long,* of Wa Keeney, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff appeals from a judgment in favor of the defendant in an action to replevin an automobile under a recorded title note.

E. C. Powell owned an automobile which he desired to exchange with the plaintiff for a new one, and went with the defendant to Salina on April 13, 1917, for the purpose of making

the exchange. Powell's personal attempt to make the trade appears to have been unsuccessful. In Salina he met G. M. Jones, the agent of the plaintiff at Wa Keeney, Powell's home, and asked Jones to see what kind of a deal he could make with the plaintiff in exchanging the automobiles. Jones negotiated with the plaintiff for that purpose and succeeded in making an agreement that the automobiles should be exchanged and that Jones should execute to the plaintiff a title note for the difference in value between them. Jones executed such a note for $450. The note was filed for record in Trego county a few days thereafter. The car appears to have been taken away by Powell and Jones and to have been taken to Wa Keeney by them. The defendant, prior to the exchange of automobiles, had signed a note with Powell as security for him, and a verbal agreement had been made by which Kline should have a lien on an automobile then owned by Powell, probably the one traded to the plaintiff. On June 27, 1917, Powell gave to Kline a bill of sale for the new automobile, and soon thereafter with the consent of Kline drove it to Cheyenne, Wyoming. Powell there wrecked the car. He then notified the defendant to come and get it. The defendant did so, paid $137.35 for repairs on it, returned with the car to Wa Keeney about August 27, 1917, and recorded the bill of sale. The plaintiff afterward demanded of Kline the possession of the car. That possession was refused, and this action was commenced. From the instructions it may be gathered that the defendant gave a redelivery bond and retained possession of the automobile.

The jury answered special questions as follows:

"1. Was G. M. Jones the owner of the automobile sued for at the time he executed and delivered the mortgage note attached to the plaintiff's petition? Ans. No.

"2. Did the Central Kansas Motor Company trade and deliver to E. C. Powell the automobile sued for in this action? Ans. Yes.

"3. Did G. M. Jones trade and deliver to E. C. Powell the automobile sued for in this action? Ans. No. . . .

"5. Did E. C. Powell agree to take the automobile sued for subject to a lien thereon? Ans. No.

"6. Did E. C. Powell authorize G. M. Jones to execute and deliver to the Central Kansas Motor Company a title note of the car sued for in this action? Ans. No.

"7. When G. M. Jones executed and delivered to plaintiff the title note attached to plaintiff's petition, was he acting for himself and in his

Motor Co. v. Kline.

own right, or was he acting as the agent of E. C. Powell? Ans. No evidence.

"8. At the time he acquired the car from E. C. Powell, did the defendant have any actual knowledge that the plaintiff had a lien thereon. Ans. No.

"9. Did the defendant intend to acquire said auto from E. C. Powell free and clear from any and all incumbrances? Ans. Yes.

"10. Did the defendant, in reliance upon the clear title he believed he was acquiring, expend money in having said auto repaired and get the same into his possession? Ans. Yes."

1. The judgment deprived the plaintiff of the lien which was attempted to be retained at the time the automobile was sold. If the automobile was sold to Jones, the title note, when recorded, was a valid and subsisting lien on the automobile in the hands of all who thereafter acquired any interest in it. On the other hand if it was sold to Powell, and Jones was acting as an agent for Powell in the purchase of it, Powell or his agent for him should have executed the title note in order to have given the plaintiff a lien on the automobile. The plaintiff could not retain the lien by selling the automobile to Powell and taking a title note from Jones. It is true that the findings of the jury were in effect that the sale was made to Powell and not to Jones; the answers to the first three questions indicate that Jones was acting as the agent of Powell, but the answer to the seventh question says that there was no evidence from which to determine that fact, although the negotiations with Jones, his giving the note, and the recital in the note that "this note is given for the purchase of one Studebaker Six serial 204749, Engine 5415" tended strongly to show that the automobile was sold to Jones and that some subsequent arrangement between Jones and Powell enabled Powell to become the owner of it. The answers are contradictory to each other and cannot stand together.

2. On the trial the jury returned into court, after having retired to consider its verdict, and asked the court concerning the effect of a judgment in favor of the plaintiff on the liability of the defendant to pay the balance of the note after deducting the amount that would be realized from the sale of the automobile. In response to that inquiry the court instructed the jury as follows:

"As has already been stated in the previous instructions given you in this case; the question which you are called upon to decide is whether,

under the terms of the note attached to plaintiff's petition, the Central Kansas Motor Company was entitled to possession of the automobile in question, at the time this suit was commenced.

"For your information, however, you are instructed that if a recovery is awarded to the plaintiff in this case, it will be entitled to possession of the automobile, and must sell the same for the purpose of paying the amount, if any, due to it upon the note attached to plaintiff's petition; and should the car fail to bring enough at such sale to fully satisfy the amount due plaintiff on said note, together with costs of such sale, then the plaintiff would have the right to collect from the defendant the deficiency, or the difference between the proceeds of the sale and the amount of the principal and interest due on said note, with costs of sale. On the other hand, should the proceeds of such sale exceed the amount due on said note and costs of sale, the defendant Kline would be entitled to whatever such excess might be."

There was no evidence to show that the defendant was liable on the note—his name did not appear on it, and there was no evidence to show that he had agreed to pay it. The instruction was erroneous and should not have been given; the defendant cannot be compelled to pay the note or any part of it. The inquiry of the jury indicated that it thought the question material, and a correct instruction should have been given.

3. The defendant contends that even if his possession of the automobile is wrongful, he should be subrogated to the rights of those who made repairs on it at Cheyenne. If on a new trial it should be found that the plaintiff was entitled to the possession of the automobile at the time this action was commenced, the defendant's contention will be material. The argument of the defendant is that the parties who made the repairs had a lien on the automobile until their claim was paid, and that because he paid that claim he is entitled to be subrogated to their lien rights. The difficulty with the argument is that the defendant contracted for the repairs; that he was primarily liable for them; and that he paid for making them. The debt was his, not that of another. To entitle him to subrogation the debt must have been the debt of another. As between the defendant and Powell, the debt might have been Powell's, but as between the defendant and the plaintiff it cannot be said that the debt was the plaintiff's. Our statute, section 6082 of the General Statutes of 1915, gives a lien to the one who makes the repairs, not to the person who procures the repairs to be made. The defendant could not have the repairs

made and thereby create a lien on the automobile and then take an assignment of the claim for repairs by paying it or be subrogated to the repairman's rights. If the plaintiff had a lien on the automobile at the time it was wrecked, the plaintiff was entitled to the possession of it at that time, and the defendant could not then take the car and by causing repairs to be made on it create a lien in his favor superior to the rights of the plaintiff.

At present the automobile is probably of little value, and its return will not compensate the plaintiff. If the plaintiff had a lien on the automobile, he was entitled to its possession, and should have judgment for its return or for its value at the time the defendant took possession of it with interest from that time until judgment is rendered, unless the amount of the two would exceed the amount of the note and interest. In replevin actions damages are recoverable for depreciation in the value of property wrongfully detained. (*Russell v. Smith,* 14 Kan. 366; *Fair v. Bank,* 69 Kan. 353, 76 Pac. 847; 34 Cyc. 1564; Note, 69 L. R. A. 286; Note, 30 L. R. A., n. s., 371.) If the automobile is returned, and it has depreciated in value since it was wrecked, judgment should be rendered against the defendant for the amount of its value immediately after it was wrecked and interest thereon less its value at the time it is returned. In no event should the judgment in favor of the plaintiff exceed the amount of the note and interest.

The judgment is reversed, and a new trial is directed.

BURCH and DAWSON, JJ., not sitting.